UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Thomas M. Brown, Esq.
United States Department of Justice
Civil Division, Torts Branch
Aviation, Space & Admiralty Litigation
175 N Street, NE, 8th Floor
Washington, DC 20002
(202) 616-4112

| | |
|---|---|
| *In re* Complaint of Adrian Avena, as Owner and AA Commercial, LLC, as Owner *Pro Hac Vice*, of the Fishing Vessel CONCH'RD, for Exoneration from or Limitation of Liability | Case No: 1:21-cv-00515-KMW-MJS<br><br>UNITED STATES OF AMERICA'S ANSWER TO AMENDED THIRD-PARTY COMPLAINT OF KIMBERLY WOLFE |

The United States of America answers Claimant Kimberley Wolfe's Amended Third-Party Complaint, ECF No. 33, as follows:

1. The United States admits this is a case of admiralty and maritime jurisdiction, over which the Court has exclusive jurisdiction pursuant to 28 U.S.C. § 1333, and that the Suits in Admiralty Act and the Public Vessels Act contain waivers of the United States' sovereign immunity that are applicable under certain limited circumstances; but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 1, which are denied.

2. With respect to the United States, the allegations of paragraph 2 are denied. With respect to other parties, further denied for lack of sufficient knowledge or information.

3. Paragraph 3 asserts no allegation to which an admission or denial is required. Fed. R. Civ. P. 8(b).

4. Paragraph 4 asserts no allegation to which an admission or denial is required. Fed. R. Civ. P. 8(b).

5. The United States admits that Claimant Wolfe's amended third-party complaint, ECF No. 33, arises from the same capsizing of the F/V CONCH'RD, with loss of life, which is the subject of Petitioner's limitation action. The remaining allegations of Paragraph 5, viz., what "led to the filing of" the limitation action, are denied for lack of sufficient knowledge or information.

6. The United States admits that Kimberly Wolfe filed an answer and claim, ECF No. 18, which speaks for itself and is the best evidence of what is stated in full therein. Third-party Plaintiff's characterization of that pleading in Paragraph 6 is not an allegation to which an admission or denial is required. Fed. R. Civ. P. 8(b). To the extent a response is required, denied.

7. Paragraph 7 asserts no allegation to which an admission or denial is required. Fed. R. Civ. P. 8(b). To the extent a response is required, denied.

8. The United States admits that Emergency Position Indicating Radio Beacons, or EPIRBs, are electronic communications devices used in maritime transportation that, when properly operated, are capable of transmitting distress signals via the COSPAS-SARSAT system. Further admits that SARSAT stands for Search and Rescue Satellite Aided Tracking; that COSPAS is a Russian term for this system; and that the system was developed by a multinational partnership. Lacks sufficient knowledge or information and therefore denies that "most often" EPIRBs are used in the event of an emergency involving "a vessel capsizing or sinking." Except as specifically admitted, denies the remaining allegations of Paragraph 8.

9. The United States admits that when properly utilized, an EPIRB uses the 406 MHz frequency to send a distress signal via the COSPAS-SARSAT system; and that there is a process for vessel owners or operators to register an EPIRB. Denies that EPIRBs are installed on all marine vessels. Denies the remaining allegations of Paragraph 9.

10. The United States admits that proper registration of an EPIRB is important to search and rescue efforts, and in some cases may allow for faster response; that some EPIRB makes and models allow for either manual or automatic activation; and that some EPIRB makes and models, as installed, should float free from a holding bracket after being submerged. Denies that EPIRBs "carried in bags" satisfy any regulatory requirement for an "installed" EPIRB. The remaining allegations of paragraph 10 are denied.

11. The United States admits that by regulation, EPIRB registration with the National Oceanographic and Atmospheric Administration ("NOAA") must be kept up-to-date "upon change of vessel or EPIRB ownership, transfer of EPIRB to another vessel, or any other change in registration information." 47 C.F.R. § 80.1061(f).

12. The United States admits that some commercial fishing vessels are required to carry an EPIRB. *See* 46 C.F.R. §§ 25.26-5, 25.26-20. The remaining allegations of Paragraph 12 are denied for lack of sufficient knowledge or information.

13. The United States admits that activation and broadcast by an EPIRB may indicate the capsizing or sinking of a vessel, that EPIRB signals may indicate a serious threat to the lives of those aboard a broadcasting vessel, and that registration of EPIRBs in the United States with NOAA is important. The remaining allegations of Paragraph 13 are denied.

14. The allegations of Paragraph 14 are admitted.

15. The allegations of Paragraph 15 are admitted.

16. The United States admits that it has a well-developed search and rescue system by which officers are vested with discretion to effect certain rescue operations; and that the United States Coast Guard is the primary agency of the United States for coordinating maritime searches

and rescues on the navigable waters of the United States. The remaining allegations of Paragraph 16 are denied.

17. The United States admits that NOAA is an agency of the United States; is the lead agency in the United States for the COSPAS-SARSAT Program, operates certain (but not all) satellites that participate in that Program; and manages the United States' Mission Control Center (MCC), in which role it receives and, through computerization, automatically disseminates SARSAT data to other entities responsible for coordinating maritime or other searches. The United States also further admits as alleged "that the Coast Guard can take what it deems to be appropriate action to determine the validity of a distress signal" and then can coordinate "a marine search and rescue if necessary." The remaining allegations of Paragraph 17 are denied.

18. The United States admits that certain Low Earth Orbiting (LEO) satellites are equipped in a manner that allows the SARSAT system to determine, from multiple satellite passes, the position of an EPIRB beacon, assuming that beacon is not transmitting positional information in the first instance. The remaining allegations of Paragraph 18 are denied.

19. The United States admits that if an EPIRB beacon is not communicating its GPS position to the SARSAT system, then, lacking that information, GEOSAR satellites cannot independently determine the location of a 406 MHz emergency beacon. The remaining allegations of Paragraph 19 are denied.

20. The allegations of Paragraph 20 are admitted.

21. The United States admits that, as a result of the capsizing of F/V CONCH'RD, Aaron Greenberg "was cast into the frigid waters of the Atlantic Ocean," that he is presumed dead after being last seen in the waters of the Atlantic Ocean, and that his death would have been averted had the vessel been seaworthy and operated in a non-negligent manner by Adrian Avena and/or

the vessel's owners, operators, or other interests ashore. Denies that a "couple hours" passed between the vessel capsizing and Mr. Greenberg's passing. The remaining allegations of Paragraph 21 are denied for lack of sufficient knowledge or information.

22. The allegations of Paragraph 22 are denied for lack of sufficient knowledge or information.

23. The United States admits that the first alert from the EPIRB with beacon ID#: 2DCC8-10FFC-FFBFF was detected at 2:06 p.m., and that the site ID# was 76667. Denies that the EPIRB "began transmitting a signal that the vessel had submerged . . . ." Denies for lack of sufficient knowledge or information whether the EPIRB broadcasts began as a result of manual or automatic activation.

24. The United States admits the EPIRB was last registered to Daniel J. Avena and last associated with the GOLD RUSH II. The remaining allegations of Paragraph 24 are denied for lack of sufficient knowledge or information.

25. The allegations of Paragraph 25 are admitted, with correction of the beacon ID# to 2DCC8-10FFC-FFBFF and site ID# to 76667.

26. The United States admits that properly functioning EPIRB beacons are capable of communicating their GPS position to satellites of the COSPAS-SARSAT system, which satellites communicate with stations on the Earth (both within and outside of the United States), some of which are operated by NOAA. The remaining allegations of Paragraph 26 are denied.

27. The United States admits that an EPIRB with expired registration to the GOLD RUSH II and a beacon ID# 2DCC8-10FFC-FFBFF made a broadcast at 2:06 p.m. local time on December 3, 2020. The remaining allegations of Paragraph 27 are denied.

28. The allegations of Paragraph 28 are admitted.

29. The United States admits that the MCC, through computer automation, forwarded information of the EPIRB broadcast to the RCC at Coast Guard District 5 in Portsmouth, Virginia.

30. The United States admits that the Coast Guard began making urgent marine information broadcasts for a vessel named "GOLD RUSH II," that multiple radio broadcasts for the vessel GOLD RUSH II were made prior to 2:31 p.m., and that this broadcast was updated immediately upon receipt of accurate information from Daniel J. Avena that the proper vessel name was "CONCH'RD." Denies for lack of sufficient knowledge or information the remaining allegations of Paragraph 30.

31. The United States admits that if an alerting EPIRB did not properly transmit positional information in the first instance, then redundant technologies built into the COSPAS-SARSAT system can allow the system to determine the position of a broadcasting vessel, given adequate time and conditions. The remaining allegations of Paragraph 31 are denied.

32. The United States admits that if an alerting EPIRB did not properly transmit positional information in the first instance, then it takes more time to determine the position of the broadcasting vessel, and identify the same to emergency responders. The remaining allegations of Paragraph 32 are denied.

33. The United States admits that at 2:30 p.m. local time, and no earlier, the United States Coast Guard received sufficient data to determine the signaling EPIRB was somewhere within the search area of Sector Delaware Bay in Coast Guard District 5. The United States further admits that Coast Guard District 5 directed Coast Guard Sector Delaware Bay to take certain responsive actions, but denies that the "Sector was tasked with the responsibility to appropriately respond to the emergency signaling." The United States admits as alleged that "appropriate

response includes determining whether it is a false alarm or an emergency and then taking appropriate search and rescue action." The remaining allegations in Paragraph 33 are denied.

34. The United States admits that, prior to the receipt of positional information from the EPIRB, "a telephone call was made from the Coast Guard to third-party defendant Daniel J. Avena" because he was the last registered owner of the EPIRB with beacon ID# 2DCC8-10FFC-FFBFF that was registered in 2015, expired on November 3, 2017, was not renewed, and was associated with the GOLD RUSH II. The United States denies the allegation that 2:09 p.m. is about the same time as 2:30 p.m.

35. The United States admits that it placed a subsequent phone call to Daniel Avena, during which "for the first time the Coast Guard was advised that the signaling EPIRB was not affixed to or related anymore to the GOLD RUSH II, but that it had been transferred to a different vessel, the CONCH'RD." Denies that this call occurred at about 2:36 p.m.

36. The allegations of Paragraph 36 are denied for lack of sufficient knowledge or information.

37. The allegations of Paragraph 37 are denied.

38. The allegations of Paragraph 38 are denied.

39. The United States admits that at approximately 2:48 p.m., newly available positional information was communicated to Sector Delaware Bay and Air Station Atlantic City to perform a search and rescue. The remaining allegations of Paragraph 39 are denied.

40. The United States admits that at approximately 2:48 p.m., the Coast Guard informed Daniel Avena by telephone of newly available positional information. The remaining allegations of Paragraph 40 are denied.

41. The United States admits that upon learning from the Coast Guard that the EPIRB registered to "GOLD RUSH II" was alerting, Daniel Avena contacted certain persons to muster a rescue response. The remaining allegations of Paragraph 41 are denied for lack of sufficient knowledge or information.

42. The allegations of Paragraph 42 are denied.

43. The allegations of Paragraph 43 are denied.

44. The United States admits only that at approximately 2:44 p.m., the District 5 RCC requested the launch of a rescue helicopter from Coast Guard Air Station Atlantic City, that following required preflight procedures and briefing this helicopter launched at 3:13 p.m., and that it arrived on scene at approximately 3:32 p.m. local time. The remaining allegations of Paragraph 44 are denied.

45. The allegations of Paragraph 45 are denied for lack of sufficient knowledge or information.

46. The United States admits that the first rescue boat on scene was the vessel JERSEY BOY, and that this vessel rescued Adrian Avena. The remaining allegations of Paragraph 46 are denied for lack of sufficient knowledge or information.

47. The allegations of Paragraph 47 are denied for lack of sufficient knowledge or information.

48. The allegations of Paragraph 48 are denied for lack of sufficient knowledge or information.

49. The allegations of Paragraph 49 are denied for lack of sufficient knowledge or information.

50. The United States admits the early broadcasts by the Coast Guard did not reference the fishing vessel CONCH'RD by name because the EPIRB with which Adrian Avena set sail on December 3, 2020 was not properly registered or associated to that vessel, as it should have been, and further because Daniel J. Avena did not apprise the Coast Guard during the original phone call of his or Adrian Avena's failure to properly register the EPIRB. The remaining allegations of Paragraph 50 are denied for lack of sufficient knowledge or information.

51. The United States denies that the Coast Guard rescue helicopter arrived on scene at 3:36 local time; but admits that after arriving on scene, it directed the JERSEY BOY to continue to port with Adrian Avena, and that by that time, Aaron Greenberg was nowhere to be found, having slipped under the waves before the Coast Guard helicopter arrived. The United States denies for lack of sufficient information and knowledge the exact time at which Aaron Greenberg slipped under the waves.

52. The allegations of Paragraph 52 are denied for lack of sufficient knowledge or information.

53. The allegations of Paragraph 53 are denied for lack of sufficient knowledge or information.

54. The United States admits the fishing vessel CONCH'RD was equipped with a life raft, but denies this life raft failed to deploy. The remaining allegations of Paragraph 54 are denied for lack of sufficient knowledge or information.

55. The allegations of Paragraph 55 are denied for lack of sufficient knowledge or information.

56. The allegations of Paragraph 56 are denied for lack of sufficient knowledge or information.

57. The United States admits Aaron Greenberg was lost at sea and presumed dead on December 3, 2020. The remaining allegations of Paragraph 57 are denied for lack of sufficient knowledge or information.

58. The allegations of Paragraph 58 are denied for lack of sufficient knowledge or information.

59. The United States denies that the EPIRB was "installed" on CONCH'RD. The remaining allegations of Paragraph 59 are denied for lack of sufficient knowledge or information.

60. The United States admits that the EPIRB with beacon ID# 2DCC8-10FFC-FFBFF had an expired registration as of November 3, 2017; and that upon transfer to CONCH'RD no one updated the EPIRB registration, although this was required by regulation. The United States denies the EPIRB was "installed" on CONCH'RD.

61. The United States admits failure to re-register the EPIRB after transferring it to the CONCH'RD violated applicable federal regulations, was negligence, and constituted negligence per se.

62. The United States admits the allegations of Paragraph 62, except that this contact occurred at approximately 2:15 p.m. local time on December 3, 2020.

63. The allegations of Paragraph 63 are denied for lack of sufficient knowledge or information.

64. The United States admits that the improper registration of the EPIRB that transmitted from the CONCH'RD, in violation of 47 C.F.R. § 80.1061(f), delayed dissemination of accurate information to the maritime community, that the distress signal received was from the CONCH'RD rather than GOLD RUSH II. The remaining allegations of Paragraph 64 are denied.

65. The United States admits that the first time Daniel J. Avena informed the Coast Guard that the EPIRB with expired registration to the GOLD RUSH II was actually on the CONCH'RD was during a subsequent phone call at or after 2:26 p.m. local time, by which phone call the EPIRB still was not transmitting positional information to the COSPAS-SARSAT system. The remaining allegations in Paragraph 65 are denied.

66. The allegations of Paragraph 66 are denied for lack of sufficient knowledge or information.

67. The allegations of Paragraph 67 are legal conclusions, which do not require a response. To the extent a response is deemed to be required, the United States admits that those responsible for the EPIRB on CONCH'RD were in violation of 47 C.F.R. § 80.1061(f) for failing to properly register it; and that the violation of that regulation, along with the failure of Daniel Avena to initially advise the Coast Guard that the EPIRB was on the CONCH'RD, led to the dissemination of inaccurate information via urgent marine information broadcasts. Denies the remaining allegations of Paragraph 67 for lack of sufficient knowledge or information.

68. The United States admits the purpose of EPIRB registration is to assist in saving lives and property in the maritime environment. The remaining allegations of Paragraph 68 are legal conclusions, which do not require a response. To the extent a response is deemed to be required, the allegations of Paragraph 68 are denied for lack of sufficient knowledge or information.

69. The allegations of Paragraph 69 are legal conclusions, which do not require a response. To the extent a response is deemed to be required, the United States responds as follows. Admits the allegations of negligence and/or unseaworthiness related to D. Avena, A. Avena, and AA Commercial LLC, and further admits that Aaron Greenberg died from drowning at sea prior

to the arrival of any private or public rescue craft.  Denies that the United States was negligent in any manner relating to this case; or that it is jointly and severally liable with any other party in this case.  Denies the remaining allegations of Paragraph 69 for lack of sufficient information or knowledge.

70. Paragraph 70 asserts no allegation to which an admission or denial is required.  Fed. R. Civ. P. 8(b).  To the extent a response is deemed to be required, Paragraph 70 is denied.

71. The United States incorporates its responses to Paragraphs 1 through 70.  The United States understands that Claimant's "annexed answer and claim" does not state any allegations against the United States to which an admission or denial by the United States is required.  Fed. R. Civ. P. 8(b).  To the extent there is any such allegation against the United States contained in Claimant's "annexed answer and claim," then denied.

72. The United States admits only that the Coast Guard had an obligation to accurately and correctly convey certain information provided to it between certain individuals and/or entities, which it did.  The remaining allegations of Paragraph 72 are denied.

73. Paragraph 73 does not state an allegation, but merely expresses a possibility ("D. Avena may contend that . . . he advised the Coast Guard . . . .").  To the extent a response is deemed required, denied.

74. Paragraph 74 does not state an allegation, but merely expresses a possibility ("Claimant is concerned that D. Avena will contend that . . . he advised the caller from the Coast Guard . . . .").  To the extent a response is deemed required, denied.

75. The allegations of Paragraph 75 are denied.

76. The allegations of Paragraph 76 are denied.

77. The allegations of Paragraph 77 are denied.

78. The allegations of Paragraph 78 are denied.

79. The allegations of Paragraph 79 are denied.

80. In response to Paragraph 80, the United States incorporates its response to Paragraph 69. Any remaining allegations in Paragraph 80 are denied.

81. No response is required to Paragraph 81. To the extent a response is deemed to be required, Paragraph 81 is denied.

82. In response to Paragraph 82, the United States incorporates its responses to Paragraphs 1 through 81.

83. No response is required to Paragraph 83. To the extent a response is deemed to be required, Paragraph 83 is denied for lack of sufficient knowledge or information.

84. No response is required to Paragraph 84. To the extent a response is deemed to be required, Paragraph 84 is denied for lack of sufficient knowledge or information.

85. No response is required to Paragraph 85. To the extent a response is deemed to be required, Paragraph 85 is denied for lack of sufficient knowledge or information.

86. No response is required to Paragraph 86. To the extent a response is deemed to be required, Paragraph 86 is denied for lack of sufficient knowledge or information.

87. The United States admits F/V CONCH'RD partially sank on December 3, 2020, and that Aaron Greenberg was lost at sea. The remaining allegations of Paragraph 87 are denied for lack of sufficient knowledge or information.

88. No response is required to Paragraph 88. To the extent a response is deemed to be required, Paragraph 88 is denied for lack of sufficient knowledge or information.

89. No response is required to Paragraph 89. To the extent a response is deemed to be required, Paragraph 89 is denied for lack of sufficient knowledge or information.

90. No response is required to Paragraph 90. To the extent a response is deemed to be required, Paragraph 90 is denied for lack of sufficient knowledge or information.

91. In response to Paragraph 91, the United States incorporates its responses to Paragraphs 1 through 90.

92. No response is required to Paragraph 92. To the extent a response is deemed to be required, Paragraph 92 is denied for lack of sufficient knowledge or information.

93. No response is required to Paragraph 93. To the extent a response is deemed to be required, Paragraph 93 is denied for lack of sufficient knowledge or information.

94. No response is required to Paragraph 94. To the extent a response is deemed to be required, Paragraph 94 is denied for lack of sufficient knowledge or information.

95. No response is required to Paragraph 95. To the extent a response is deemed to be required, Paragraph 95 is denied for lack of sufficient knowledge or information.

96. No response is required to Paragraph 96. To the extent a response is deemed to be required, Paragraph 96 is denied for lack of sufficient knowledge or information.

97. In response to Paragraph 97, the United States incorporates its responses to Paragraphs 1 through 96.

98. No response is required to Paragraph 98. To the extent a response is deemed to be required, Paragraph 98 is denied for lack of sufficient knowledge or information.

99. No response is required to Paragraph 99. To the extent a response is deemed to be required, Paragraph 99 is denied for lack of sufficient knowledge or information.

100. No response is required to Paragraph 100. To the extent a response is deemed to be required, Paragraph 100 is denied for lack of sufficient knowledge or information.

101. No response is required to Paragraph 101. To the extent a response is deemed to be required, Paragraph 101 is denied for lack of sufficient knowledge or information.

102. In response to Paragraph 102, the United States incorporates its responses to Paragraphs 1 through 101.

103. No response is required to Paragraph 103. To the extent a response is deemed to be required, Paragraph 103 is denied for lack of sufficient knowledge or information.

104. No response is required to Paragraph 104. To the extent a response is deemed to be required, Paragraph 104 is denied for lack of sufficient knowledge or information.

105. No response is required to Paragraph 105. To the extent a response is deemed to be required, Paragraph 105 is denied for lack of sufficient knowledge or information.

106. In response to Paragraph 106, the United States incorporates its responses to Paragraphs 1 through 105.

107. No response is required to Paragraph 107. To the extent a response is deemed to be required, Paragraph 107 is denied for lack of sufficient knowledge or information.

108. No response is required to Paragraph 108. To the extent a response is deemed to be required, Paragraph 108 is denied for lack of sufficient knowledge or information.

109. No response is required to Paragraph 109. To the extent a response is deemed to be required, Paragraph 109 is denied for lack of sufficient knowledge or information.

110. No response is required to Paragraph 110. To the extent a response is deemed to be required, Paragraph 110 is denied for lack of sufficient knowledge or information.

The unnumbered paragraph beginning with "WHEREFORE" requires no response. To the extent a response is deemed to be required, denied.

//

## **AFFIRMATIVE DEFENSES**

The United States further responds by asserting the following:

1. The Court lacks subject matter jurisdiction over claims asserted against the United States in this case.

2. No employee, agent, or servant of the United States breached any duty owed to any person at any time, and no action or inaction by the United States or any of its employees, agents, or servants was a cause, proximate or otherwise, of any of the damages alleged in Claimant's Third-Party Complaint.

3. As a result of the negligent and unseaworthy operation of F/V CONCH'RD on December 3, 2020 – which included violating EPIRB safety regulations, operating an inshore craft beyond three nautical miles from the shore while in an unstable condition; operating without a properly trained and briefed crew; operating without properly located, installed, and available emergency equipment; allowing the propeller to become entangled in rope; and then powering against that rope – CONCH'RD swamped and capsized, and its crew entered the sea without any protection from emergency equipment, and without the vessel having given any timely distress signal. *See also* ECF No. 33 (Wolfe Amended Claim). These events prompted the emergency dispatch of, and extensive searching by, Coast Guard aircraft, a Coast Guard cutter (USCGC LAWRENCE LAWSON), and a Coast Guard small-boat station team, to effect salvage and life salvage missions. As a result, the United States of America bore significant costs and damages, presently approximated at over $800,000. The United States asserts as an avoidance, affirmative defense, and/or counterclaim, its right to have this amount of money damages set-off against or recouped from any money damages that should be awarded against it. *See In re Petition of Frescati*

*Shipping Co., Ltd.*, No. 05-CV-305 (JHS), 2016 WL 4035994, at *74–75 (E.D. Pa. July 25, 2016) ("In addition, recoupment may be pled either as a claim or as a defense.").

4.  The claim fails to allege a violation of the standard of care of a rescuer, and is barred by the maritime rescue doctrine and/or the "Good Samaritan rule." *See, e.g.*, *Patentas v. United States*, 687 F.2d 707 (3d Cir. 1982).

5.  The Court lacks subject matter jurisdiction over claims resulting from the exercise or performance of, or the failure to exercise or perform, discretionary or governmental functions by federal agencies, officers, agents, servants, employees, vessels, aircraft, crew, or others for whom the United States was or is responsible, and for which actions or failures the United States cannot be held liable.

6.  As to the F/V CONCH'RD and its owners or interests, the "Pennsylvania Rule" applies to the case. *The Pennsylvania*, 86 U.S. (19 Wall.) 125 (1873).

7.  This incident was caused and contributed to by, as applicable, the acts, omissions, negligence, unseaworthiness, fault, recklessness, lack of due care, and breaches and violations of duties, regulations and law of Adrian Avena; Daniel Avena; AA Commercial LLC, its officers, agents, servants, employees, vessel, crew, or others for whom it was responsible, including, but not limited to, F/V CONCH'RD; and any other vessel interests (hereinafter "Vessel Interests"), all such acts, omissions, negligence, unseaworthiness, fault, recklessness, lack of due care, and breaches and violations of duties and law being within the privity and knowledge of Vessel Interests.

8.  The liability of the United States (if any) to Claimant must be reduced or barred because of the comparative fault, contributory negligence, assumption of risk, unseaworthiness or other tortious conduct of parties, persons or entities different from the United States, or that

liability was assumed by parties, persons or entities different from the United States, including but not limited to Aaron Greenberg, Adrian Avena, Daniel Avena, AA Commercial LLC, its officers, agents, servants, employees, vessel, crew, or others for whom it was responsible.

9. The limitation fund established by Petitioner is insufficient and is less than the value of F/V CONCH'RD or its tackle, which Petitioner made no effort to salvage.

10. The negligent conduct of Aaron Greenberg and/or other party persons (or entities), over whom the United States had no control, was the superseding and/or intervening cause of all damages allegedly sustained.

11. The claim is barred or limited by the fellow servant doctrine.

12. The Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 30301 *et seq*. provides Claimant Kimberley Wolfe's exclusive cause of action available as against the United States, preempting any remedy that otherwise might be available under the general maritime law.

13. As against the United States, the doctrine of joint liability with a right of contribution does not apply to damages beyond those recoverable under the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 30301 *et seq*., and for any such damages, there is several liability against the decedent's employer only, with no right of contribution.

14. The Third-Party Complaint fails to state a claim upon which relief can be granted.

The United States respectfully requests that the Court enter judgment in its favor and dismiss Claimant's Amended Third-Party Complaint with prejudice.

//

//

//

**DESIGNATION OF AGENT FOR SERVICE UNDER LOCAL CIVIL RULE 101.1(f)**

In accordance with Local Civil Rule 101.1(f), the undersigned hereby makes the following designation for the receipt of service of all notices or papers in this action at the following address:

United States Attorney's Office
District of New Jersey
Attention: Kristin L. Vassallo
Assistant U.S. Attorney
970 Broad Street, Room 700
Newark, NJ 07102

Dated: January 28, 2022

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

PHILIP R. SELLINGER
United States Attorney

/s/ Thomas M. Brown
THOMAS M. BROWN
JARED H. HOOD
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
Aviation, Space & Admiralty Litigation
175 N Street, NE, 8th Floor
Washington, DC 20002
(202) 616-4112, Thomas.M.Brown@usdoj.gov
(202) 598-1235, Jared.H.Hood@usdoj.gov
Fax: (202) 616-4002
*Attorneys for the United States*

## **CERTIFICATE OF SERVICE**

I certify that on January 28, 2022, the foregoing was filed using the Court's CM/ECF system, which will send an electronic notice of filing to the following counsel of record:

Brian McEwing
Reeves McEwing LLP
10 Andrews Lane
P.O. Box 599
Dorchester, NJ 08316-0599
609-846-4717
Fax: 609-884-4378
Email: mcewing@lawofsea.com

Mary Reeves
Reeves McEwing LLP
1004 S. Front Street
Philadelphia, PA 19147
267-324-3773
Fax: 267-519-9463
Email: reeves@lawofsea.com

*Attorneys for Adrian Avena and AA Commercial, LLC*

Paul T. Hofmann
Hofmann & Schweitzer
1130 Route 202 South
Suite A7
Raritan, NJ 08869
908-393-5662
Fax: 212-465-8849
Email: paulhofmann@hofmannlawfirm.com

Joseph Fattorusso, II
Hofmann & Schweitzer
212 West 35th St., 12th Fl.
New York City, NY 10001
609-757-2358
Email: joseph@hofmannlawfirm.com

*Attorneys for Kimberly Wolfe*

Michael Louis Testa, SR.
Testa Heck Scrocca & Testa, PA
424 Landis Avenue
P.O. Box 749
Vineland, NJ 08360
(856) 691-2300
Email: mtesta@testalawyers.com

*Attorney for Daniel J. Avena*

                                                  */s/ Thomas M. Brown*
                                                  THOMAS M. BROWN
                                                  Trial Attorney