Thomas M. Brown, Esq.
U.S. Department of Justice
Aviation, Space & Admiralty Litigation
175 N Street, NE, 8th Floor
Washington, DC 20002
(202) 616-4112

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| *In re* Complaint of ADRIAN AVENA, as Owner and AA COMMERCIAL, LLC, as Owner *Pro Hac Vice*, of the Fishing Vessel CONCH'RD, for Exoneration from or Limitation of Liability | HON. KAREN WILLIAMS<br><br>*Civil Action No.* 1:21-515 (KMW)(MJS) |

## BRIEF IN SUPPORT OF UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS

## MOTION DAY: April 18, 2022
Oral argument not requested

# **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................1

II. BACKGROUND .................................................................................2

    A. Procedural History ......................................................................2

    B. Allegations Against the United States .........................................3

        1.  The Facts Alleged .................................................................3

        2.  The Cause of Action Pleaded ...............................................6

III.    STANDARD OF REVIEW ................................................................8

    A. Motion for Judgment on the Pleadings........................................8

    B. Motion to Dismiss for Lack of Subject Matter Jurisdiction...........9

IV.    ARGUMENT.....................................................................................10

    A. Judgment on the Pleadings Is Necessary Because the Complaint Fails to
    Allege Any Cognizable Duty Owed...........................................10

        1.  The Negligence Claim Fails as a Matter of Admiralty Law. ...................10

        2.  Claimants Fail to Allege the Good Samaritan Duty of Care...................12

    B. The Court Lacks Jurisdiction Over the Claims Against the United States. ..14

        1.  This Civil Action Could Not Be Maintained Against a Private Person...14

        2.  The Discretionary Function Exception Is a Further Bar to Jurisdiction. .15

        3.  There Is No Jurisdiction over the "United States Coast Guard.".............19

V.  CONCLUSION ................................................................................20

# TABLE OF AUTHORITIES

## Statutes

46 U.S.C. § 30302 ................................................................................3

46 U.S.C. §§ 30501 *et seq.* ..............................................................2, 3

46 U.S.C. §§ 30901 *et seq.* ................................................................15

46 U.S.C. §§ 31101 *et seq.* ................................................................15

Fed. R. Civ. P. 8 ........................................................................ 8, 12, 14

Fed. R. Civ. P. 11 .............................................................................7, 12

Fed. R. Civ. P. 12 .................................................................... passim

## Cases

*Albinder v. United States*, 703 F. Supp. 246 (S.D.N.Y. 1987) .................................12

*Antonelli v. Div. of Youth & Fam. Servs.*, No. 17-cv-5519, 2018 WL 2078703 (D.N.J. May 4, 2018)...................................................................9, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................... 8, 12, 14

*Azille v. United States*, 2008 A.M.C. 2820 (D.V.I. Nov. 13, 2008) ........................18

*Baum v. United States*, 986 F.2d 716 (4th Cir. 1993)..............................................16

*Bunting v. United States*, 884 F.2d 1143 (9th Cir. 1989) ......................................11

*CNA v. United States*, 535 F.3d 132 (3d Cir. 2008) ..................................................9

*Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139 (3d Cir. 2016).......12

*Frank v. United States*, 250 F.2d 178 (3d Cir. 1957) ................................. 11, 13, 15

*Gant v. Ragone*, No. 20-cv-01727, 2020 WL 6797125 (D.N.J. Nov. 19, 2020).......8

*Good v. Ohio Edison Co.*, 149 F.3d 413 (6th Cir. 1998)....................................7, 20

*Gould Elec. Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000)............................10

*Green v. William Mason & Co.*, 996 F. Supp. 394 (D.N.J. 1998)..........................14

*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) ..............................9

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ...............................................................10

*In re U.S. Coast Guard Cutter POINT JUDITH*, No. 86-cv-4186, 1987 WL 90270
(C.D. Cal. June 5, 1987) ...................................................................................18

*Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113 (D.N.J. 2017) ..................19

*Lacey v. United States*, 98 F. Supp. 219 (D. Mass. 1951) .......................................14

*Lane v. United States*, No. 17-cv-12356, 2020 WL 1427419
(D. Mass. Mar. 24, 2020) ............................................................................. 17, 18

*Lewis v. United States*, No. 3:01-cv-821, 2002 WL 34104078
(M.D. Fla. Nov. 6, 2002) ..................................................................................18

*Malleus v. George*, 641 F.3d 560 (3d Cir. 2011) ......................................... 9, 10, 19

*Matter of Moore*, 488 F. Supp. 3d 231 (D. Md. 2020) .................................... 16, 18

*McLaughlin v. United States*, 671 F. Supp. 72 (D. Me. 1987) ...............................11

*Ortega Garcia v. United States*, 986 F.3d 513 (5th Cir. 2021) ...............................10

*P. Dougherty Co. v. United States*, 207 F.2d 626 (3d Cir. 1953)...........................13

*Patentas v. United States*, 687 F.2d 707 (3d Cir. 1982) ........................... 13, 14, 15

*Rizzo v. Connell*, No. 10-cv-4136, 2012 WL 32206 (D.N.J. Jan. 5, 2012) ..............9

*Sagan v. United States*, 342 F.3d 493 (6th Cir. 2003) ..................................... 11, 14

*Sea-Land Serv., Inc. v. United States*, 919 F.2d 888 (3d Cir. 1990) ............... 15, 16

*Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005) ..................................8

*Thomas v. Fed. Bureau of Prisons*, No. 15-cv-209, 2017 WL 3705073
(W.D. Pa. Aug. 28, 2017) .................................................................................20

*Turner v. United States*, 869 F. Supp. 2d 685 (E.D.N.C. 2012) ..................... passim

*Turner v. United States*, 736 F.3d 274 (4th Cir. 2013)................................... passim

*United States v. Mitchell*, 463 U.S. 206 (1983) .....................................................14

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
467 U.S. 797 (1984) .........................................................................................16

*United States v. Sandra & Dennis Fishing Corp.*, 372 F.2d 189 (1st Cir. 1967)....11

*United States v. Sherwood*, 312 U.S. 584 (1941) ........................................... 14, 15

*West v. United States*, No. 2:12-cv-535, 2013 WL 2404819
(E.D. Va. May 31, 2013) ...................................................................................19

*Wright v. P.J. St. Pierre Marine, Inc.*, No. 85-cv-198, 1989 WL 211485
 (S.D. Tex. Nov. 17, 1989) ....................................................................18

*Wu Tien Li-Shou v. United States*, 777 F.3d 175 (4th Cir. 2015)..........................16

*Zimmerman v. Corbett*, 873 F.3d 414 (3d Cir. 2017) ...................................... passim

**Treatises**

Thomas J. Schoenbaum, 1 ADMIRALTY & MAR. LAW (6th ed.)................................10

Thomas J. Schoenbaum, 2 ADMIRALTY & MAR. LAW (6th ed.)................................11

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| *In re* Complaint of ADRIAN AVENA, as Owner and AA COMMERCIAL, LLC, as Owner *Pro Hac Vice*, of the Fishing Vessel CONCH'RD, for Exoneration from or Limitation of Liability | *Civil Action No.* 1:21-515 (KMW)(MJS) <br><br> **BRIEF IN SUPPORT OF UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS** |

Third-party Defendant United States submits this brief in support of its motion for judgment on the pleadings and motion to dismiss. Fed. R. Civ. P. 12(c), 12(h)(3).

## I.   INTRODUCTION

On December 3, 2020, Captain Adrian Avena's fishing boat capsized while working off the New Jersey coast. He and his employee were thrown into the sea. Over 30 minutes passed before the boat's satellite beacon sent an alert to Coast Guard personnel ashore. They began gathering information, including by calling the captain's father, Daniel Avena, on the phone. An hour and a quarter after the boat sank, the satellite system obtained its position, which the Coast Guard immediately relayed to the father. While he sent friends out on a sport boat to search, the Coast Guard dispatched a rescue helicopter and a cutter. The sport boat and helicopter arrived within one minute of each other. Captain Avena survived but his deckhand perished.

As to the United States, the parties make no allegations that the Coast Guard had anything to do with Avena's boat capsizing.  Nor do they allege negligence by any Coast Guard helicopter or vessel sent to the rescue.  Rather, their only allegations relate to Coast Guard conduct *before* a rescue was launched.

Judgment on the pleadings is proper because the parties state no cognizable duty owed by the Coast Guard before it undertook a rescue.  There is none.  The duty of care owed *after* a party undertakes a rescue – the Good Samaritan duty of care – appears nowhere in the pleadings.  Even if that duty had been pleaded, the factual allegations do not support a finding that the Good Samaritan duty was breached.

As further grounds for dismissal, the pleadings fail to establish subject matter jurisdiction.  The United States has not waived its sovereign immunity because – private salvors owing no duty to undertake a rescue – this action could not be maintained against an analogous private party.  Also, because Coast Guard decisions about whether, when, or how to undertake a rescue are discretionary, the pleadings fall within the Discretionary Function exception to the Suits in Admiralty Act.

## II.   BACKGROUND

### A. Procedural History

In January 2021, Captain Adrian Avena and his company, AA Commercial, LLC, ("Petitioners") filed a petition under the Limitation of Liability Act, 46 U.S.C.

§ 30501 *et seq*.  ECF No. 1.  Without explaining what caused the fishing boat to capsize, they ask the Court to limit their liability to just $1,680.  *Id.* at 2-5.

Kimberly Wolfe, as personal representative of the decedent, filed a claim against Petitioners.  ECF No. 18; *see* 46 U.S.C. § 30302 (Death on the High Seas Act).  She separately filed a third-party claim (the "Complaint") against Daniel Avena; against products-liability defendants Revere Survival, Inc. and CM Hammar AB; and against the United States.  ECF No. 33 (Am. Compl.).  Numerous claims followed.  For ease of reference, this brief refers to the parties asserting negligence claims against the United States or the U.S. Coast Guard as "Claimants" (*i.e.*, the Petitioners and Kimberly Wolfe).

The United States has answered the pleadings, denies liability, and avers that Aaron Greenberg perished because Petitioners negligently capsized an unseaworthy fishing boat.  ECF 40-42, 49, 55.  For Claimants, the pleadings are now closed.

## B. Allegations Against the United States

### 1. *The Facts Alleged*

The following facts have been alleged against the United States and, for purposes of this motion only, are assumed to be true.  *See Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017).  On December 3, 2020, Captain Adrian Avena and deckhand Aaron Greenberg set sail aboard Avena's commercial fishing boat, the CONCH'RD.  ECF No. 1, ¶¶ 3-4, 7.  At approximately **1:30 p.m.**, while fishing

twelve miles out to sea, Avena's vessel capsized.  ECF No. 1, ¶¶ 8-9; ECF No. 33, ¶¶ 20, 22, 38.  He and his deckhand were cast into the frigid waters of the Atlantic Ocean.  ECF No. 33, ¶ 21.

CONCH'RD capsized with a radio beacon, known as an "EPIRB," aboard.[1] Beginning at about **2:07 p.m.**, a satellite first received an alert from that EPIRB. ECF No. 33, ¶ 27.  That was well over half an hour after Greenberg went into the ocean.  The satellite system identified the alert as coming from "GOLD RUSH II," when in fact the beacon was on CONCH'RD.  *Id.*, ¶¶ 27-29.  This misidentification happened because Captain Avena failed to update the national EPIRB registration after moving the beacon from one boat to another.  *Id.*, ¶¶ 11, 24-25, 27.

Shortly after **2:09 p.m.**, Coast Guard personnel began radio calls for "GOLD RUSH II."  *Id.*, ¶ 30.  At the same time, they telephoned the captain's father, Daniel Avena, whose number was listed in the beacon's expired registration.  *Id.*, ¶ 34.  In this preliminary call, Daniel Avena did *not* explain that the EPIRB was actually on CONCH'RD; he shared that information only in a subsequent call at **2:36 p.m.**  *Id.*, ¶ 35, 65.  Once he did, the Coast Guard updated their radio broadcasts, calling for the CONCH'RD instead of GOLD RUSH II.  *Id.*, ¶ 37.

Throughout this time, the boat's position remained unknown.  *Id.*, ¶ 38.  That is to be expected, as it "can take a significant amount of time" for the satellites to

---

[1] Emergency Position Indicating Radio Beacon, or "EPIRB."  ECF No. 33, ¶ 8.

determine the location of an EPIRB signal. *Id.*, ¶ 32. Even its general position –
somewhere in "the ocean in the vicinity of Coast Guard Station Cape May" – was
not acquired until **2:30 p.m.** *Id.*, ¶ 33. At about **2:44 p.m.**, for the first time, the
satellite system obtained the EPIRB's latitude and longitude. *Id.*, ¶ 38.

By **2:48 p.m.**, that position reached the Coast Guard. As such, it "became
usable for performing an actual search and rescue." *Id.*, ¶ 39. By then, Avena and
Greenberg had been in the water for over one and a quarter hours. The Coast Guard
immediately telephoned Daniel Avena to tell him "where the composite fix location
of the EPIRB signal was." *Id.* at ¶ 40. In turn, he relayed that location to friends so
they could launch a search with Avena's "very fast sport fishing vessel," the
"JERSEY BOY." *Id.*, ¶¶ 41, 46. At **2:53 p.m.**, the Coast Guard "directed the Coast
Guard cutter, the LAWRENCE LAWSON, to divert from its then current mission to
go to aid the CONCH'RD." *Id.*, ¶ 42. It also sorted a rescue helicopter from Air
Station Atlantic City that, following preflight procedures, was airborne and *en route*
to the EPIRB location by **3:16 p.m.** *Id.*, ¶ 44.

JERSEY BOY arrived at the scene of the capsized CONCH'RD at **3:35 p.m.**
*Id.*, ¶ 46. The Coast Guard helicopter arrived within the minute, at **3:36 p.m.** *Id.*,
¶ 51.[2] While Avena was rescued, sadly, "Aaron Greenberg had slipped under the

---

[2] Based on the sequence of the pleading, it is clear that the time alleged in ¶ 44 (3:26
p.m.) is simply a typographical error. ECF No. 33, ¶¶ 45-46, 51.

waves some 20 minutes earlier."  ECF No. 1, ¶ 14; ECF No. 33, ¶¶ 45, 51.  The

Cutter LAWRENCE LAWSON arrived about 25 minutes after the rescue helicopter

and the JERSEY BOY.  ECF No. 33, ¶ 42.

### 2.  *The Cause of Action Pleaded*

The Complaint alleges two theories of liability against the United States.  *Id.*,

¶¶ 71-81.  The first theory is stated as a *hypothetical alternative* to Wolfe's primary

contention that Daniel Avena did **not** tell the Coast Guard the correct boat name in

their first phone call.  *Id.*, ¶¶ 35, 62-65.

> Claimant is concerned that D. Avena will contend that in [the first]
> phone conversation he advised the caller from the Coast Guard that he
> had shifted the EPIRB from GOLD RUSH II to CONCH'RD.  **If** he did
> so, **then** the Coast Guard mismanaged that information, delaying Coast
> Guard and private rescue efforts . . . .

*Id.*, ¶ 74 (emphasis added).[3]  In other words, Wolfe alleges that the Coast Guard

owed some duty to "pass on" information to allow "rescue responses from the Coast

Guard assets [and] private individuals" without delay.  *Id.*, ¶¶ 72, 74-75.

Wolfe's second theory of liability is that the Coast Guard:

> should have directed [a] helicopter and/or other assets [in the area] to
> the scene of the capsizing to provide rescue and aid to the two seamen
> who had been aboard the vessel, but did not, constituting negligence on
> the Coast Guard's part.

---

[3] Daniel Avena has since pleaded that he lacks "sufficient information to admit or
deny" that he gave the correct boat name "[o]nly in a subsequent phone call."  ECF
No. 34, ¶ 35, 65.  That is, he is *unable* to contend what "Claimant is concerned that
[he] will contend . . ."  ECF No. 33, ¶ 74.  This alone should moot the hypothetical.

*Id.*, ¶ 77.[4]  The Complaint notes the Coast Guard sent a helicopter and cutter to the EPIRB location, but calls the decision not to direct other assets "inexplicabl[e]."  *Id.*, ¶¶ 44, 77-78.  In other words, Wolfe alleges that the Coast Guard owed a duty to undertake the rescue with different assets than the ones chosen.  *Id.*, ¶ 77.

Those are the totality of allegations that the United States owed a duty in this case.  In their cross-claim against the "United States Coast Guard,"[5] Petitioners "incorporate[d] by reference, without admitting same," the allegations in Wolfe's Complaint.  ECF No. 27, ¶ 2.[6]  The only time the word "duty" appears in Petitioners' pleading is in a conclusory paragraph that echoes what Wolfe has already alleged.  *Id.*, ¶ 4.  For their part, Revere Survival, Inc. and Daniel Avena make no negligence allegations against the United States, directly or by reference.  They simply plead a right to contribution or indemnification.  ECF No. 34 at 12; ECF No. 48 at 11.

---

[4] Claimants allege that another helicopter over the Atlantic Ocean "could have been and should have been diverted" to the rescue.  ECF No. 33, ¶ 43.  While this claim is entirely wrong, and specifically denied, it can be assumed to be true without altering the Rule 12 analysis.

[5] As discussed below, the "United States Coast Guard" is not, and cannot be, a properly named party to this action.  46 U.S.C. § 30904; *Good v. Ohio Edison Co.*, 149 F.3d 413, 418 (6th Cir. 1998).

[6] The United States disputes that it is proper pleading to make allegations that one does not "admit."  Petitioners could only incorporate Wolfe's allegations whole-cloth if, to the best of counsel's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the factual contentions have or likely will prove to have evidentiary support.  *See* Fed. R. Civ. P. 11(b)(3).

## III.   STANDARD OF REVIEW

### A. Motion for Judgment on the Pleadings

Rule 12(c) provides:  "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  "The pleadings are closed in a case after an answer is filed."  *Gant v. Ragone*, No. 20-cv-01727 (RBK/KMW), 2020 WL 6797125, at *12 (D.N.J. Nov. 19, 2020).

"A motion for judgment on the pleadings should be granted if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'"  *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).  In considering the motion, "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party."  *Id.* at 417-18.

However, a court is not obliged to accept as true "legal conclusions" in a complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Rule 8(a)(2)).

8

Following *Iqbal*, the Third Circuit instructs that "[t]o determine the sufficiency of a complaint, a court must take three steps." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). The court summarizes these steps as: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* at 563; *see also Rizzo v. Connell*, No. 10-cv-4136, 2012 WL 32206, at *2 (D.N.J. Jan. 5, 2012) (applying *Malleus* test to a Rule 12(c) motion).

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). That is true "regardless whether the moving party has filed an answer or the opposing party had an opportunity to conduct discovery." *CNA v. United States*, 535 F.3d 132, 145–46 (3d Cir. 2008); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) ("[I]f the trial court lacked jurisdiction, many months of work on the part of the attorneys and the court may be wasted.").

Unlike a motion for judgment on the pleadings, "it is the plaintiff who bears the burden of establishing subject-matter jurisdiction." *Antonelli v. Div. of Youth & Fam. Servs.*, No. 17-cv-5519 (RBK/KMW), 2018 WL 2078703, at *2 (D.N.J. May

4, 2018).  To survive the motion, the pleadings "must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (quotation omitted).  Because this motion is a facial challenge to jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id.* at 243 (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

## IV.   ARGUMENT

### A. Judgment on the Pleadings Is Necessary Because the Complaint Fails to Allege Any Cognizable Duty Owed.

#### 1.   The Negligence Claim Fails as a Matter of Admiralty Law.

On the face of the pleadings alone, the United States is "entitled to judgment as a matter of law."  *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (reversing denial of Rule 12(c) motion).  That is because Claimants fail to allege any cognizable duty owed.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (requiring every element of a claim to be well-pleaded to survive motion to dismiss); *Ortega Garcia v. United States*, 986 F.3d 513, 526 (5th Cir. 2021) ("Under general maritime law, a tortfeasor is accountable only to those to whom a duty is owed.") (quotation omitted); Schoenbaum, 1 ADMIRALTY & MAR. LAW § 5:4 (6th ed. 2018)

("Elements of a maritime negligence cause of action . . . include [t]he existence of a duty . . . .").

As a matter of hornbook admiralty law, the Coast Guard does not owe a duty to undertake a rescue. Schoenbaum, 2 ADMIRALTY & MAR. LAW § 20:1 ("The United States Coast Guard does not have an affirmative duty to rescue persons in distress."). The Third Circuit has held just that: the Coast Guard has no "duty of affirmative action owed to a person or vessel in distress." *Frank v. United States*, 250 F.2d 178, 180 (3d Cir. 1957).

Myriad courts around the country have agreed. *See Turner v. United States*, 736 F.3d 274, 280 (4th Cir. 2013), *cert. denied*, 573 U.S. 917 (2014) (Coast Guard enabling statute "does not impose any affirmative duty to commence such rescue operations"); *Sagan v. United States*, 342 F.3d 493, 498 (6th Cir. 2003) ("The United States Coast Guard does not have an affirmative duty to rescue persons in distress."); *Bunting v. United States*, 884 F.2d 1143, 1147 (9th Cir. 1989) ("The fact that the Coast Guard may voluntarily undertake a rescue and subject itself to liability does not imply that the Coast Guard has a pre-existing duty to undertake the rescue."); *United States v. Sandra & Dennis Fishing Corp.*, 372 F.2d 189, 195 (1st Cir. 1967) (finding no "general undertaking by the United States to provide rescue service on demand"); *McLaughlin v. United States*, 671 F. Supp. 72, 75 (D. Me. 1987) (describing "well-established principle that the Coast Guard is under no obligation

11

to initiate search or rescue activity and that a failure to do so is not subject to evaluation by a court for reasonableness"); *Albinder v. United States*, 703 F. Supp. 246, 247 (S.D.N.Y. 1987) (finding no "affirmative governmental duty to rescue a vessel in distress" and imposing Rule 11 sanctions for frivolous claim).

Given this clear rule, Claimants' two theories of liability plead no cognizable duty owed. With no duty to undertake a rescue in the first place, the Coast Guard did not have the alleged duty to "pass on" information to allow "rescue responses from the Coast Guard assets [and] private individuals" without delay. ECF No. 33, ¶ 75. Likewise, the Coast Guard owed no legal duty to undertake a rescue with different assets than the ones chosen. *Id.*, ¶ 77.

Because the Complaint's allegations of duty are contrary to law, "it has not 'show[n]'" that Claimants are entitled to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) (quoting Rule 8(a)); *Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 143 (3d Cir. 2016) ("[C]onclusory legal allegations . . . do not suffice to state a claim."); *Turner*, 736 F.3d at 281 ("Indeed, the thrust of the plaintiff's case is that the USCG should have done something to alleviate the [boaters'] predicament sooner. . . . [It] was under no obligation to do so.").

### 2. *Claimants Fail to Allege the Good Samaritan Duty of Care.*

As noted, Claimants' theories of liability relate only to Coast Guard conduct *before* it undertook a rescue. They make no allegations of negligence *after* that

undertaking (*i.e.*, once the Coast Guard deployed the first asset).  If they had, the Good Samaritan rule would control.  *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982) ("The foundation of the good samaritan rule is that the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently."); *Turner v. United States*, 869 F. Supp. 2d 685, 691 (E.D.N.C. 2012), *aff'd*, 736 F.3d 274 (4th Cir. 2013).[7]

But Claimants do not invoke the Good Samaritan duty of care anywhere in their pleadings.  Further, the Complaint makes no factual allegations from which the Court could find a breach of this unique duty of care.  *See Patentas*, 687 F.2d at 709 (affirming dismissal of claim because "the pleadings did not allege facts that satisfied the requisites for good samaritan liability").

To show a breach of the Good Samaritan doctrine, Claimants would have to have alleged either that the Coast Guard rescue increased the risk of harm to the decedent over what it *would have been* had the Coast Guard *not* undertaken a rescue, or that someone, induced by reliance on the Coast Guard's rescue, forewent taking

---

[7] Although the Third Circuit issued a decision in 1953 that arguably immunizes the Coast Guard from liability in the field of rescue operations, the United States relies on later interpretations of the law.  *Compare P. Dougherty Co. v. United States*, 207 F.2d 626, 634 (3d Cir. 1953) ("We are of the opinion that public policy dictates that the United States should not be liable for fault of the Coast Guard in the field of rescue operations."), *with Frank v. United States*, 250 F.2d 178, 180 (3d Cir. 1957) (applying Good Samaritan analysis to Coast Guard rescue), *and Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982) (similar).

their own saving action, which itself likely would have succeeded.  *Id.* at 714-15; *Turner v. United States*, 736 F.3d 274, 281 (4th Cir. 2013); *Sagan v. United States*, 342 F.3d 493, 498 (6th Cir. 2003); *Lacey v. United States*, 98 F. Supp. 219, 220 (D. Mass. 1951).

Because Claimants have pleaded no such facts, the Good Samaritan doctrine cannot fill the Complaint's gaping hole of a cognizable duty.  *See generally Green v. William Mason & Co.*, 996 F. Supp. 394, 397 (D.N.J. 1998) (Court not required to "fabricate a claim that a plaintiff has not spelled out in his pleadings").  Lacking that essential element of a negligence action, the Complaint fails to "show[] that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).  The United States is "entitled to judgment as a matter of law."  *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017).

## B. The Court Lacks Jurisdiction Over the Claims Against the United States.

The Court also lacks lacks subject-matter jurisdiction, for two reasons:  first, because this action could not be maintained against an analogous private party; and second, because the Discretionary Function exception applies.

### 1. *This Civil Action Could Not Be Maintained Against a Private Person.*

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The terms of that consent "define [the] court's

14

jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Claimants invoke the Suits in Admiralty Act (SIAA), 46 U.S.C. §§ 30901 *et seq.*, and the Public Vessels Act (PVA), 46 U.S.C. §§ 31101 *et seq.* ECF No. 33, ¶ 1. With these laws, Congress has waived the United States' immunity only if a "civil action in admiralty could be maintained" against "a private person . . . ." 46 U.S.C. § 30903; *Patentas v. United States*, 687 F.2d 707, 715 (3d Cir. 1982); *Frank v. United States*, 250 F.2d 178, 179 (3d Cir. 1957) ("If the United States is liable at all for negligence of the Coast Guard in connection with an attempted rescue operation, the responsibility of this public agency rises no higher than that of a private salvor.").

As noted at length above, under maritime law, the Government and private parties alike owe no pre-existing duty to rescue. *See, e.g.*, *Frank*, 250 F.2d at 180 (Coast Guard has no "duty of affirmative action owed to a person or vessel in distress"). Because the private salvor owes no duty to rescue, the Complaint could not be maintained against a private person. Thus, there has been no waiver of sovereign immunity. 46 U.S.C. § 30903.

### 2. The Discretionary Function Exception Is a Further Bar to Jurisdiction.

Finally, the Court lacks subject matter jurisdiction because the Discretionary Function exception to the SIAA and PVA applies. *Sea-Land Serv., Inc. v. United*

*States*, 919 F.2d 888, 891 (3d Cir. 1990) ("[W]e hold that the SAA . . . implicitly contains a discretionary function exception to its waiver of sovereign immunity."); *Wu Tien Li-Shou v. United States*, 777 F.3d 175, 184 (4th Cir. 2015) ("PVA contains an implied discretionary function exception."). The exception applies in cases in which "the challenged conduct (1) involved 'an element of judgment or choice' and (2) was 'grounded in social, economic, or political policy.'" *Turner v. United States*, 869 F. Supp. 2d 685, 689 (E.D.N.C. 2012) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813-14 (1984)); *see also Sea-Land*, 919 F.2d at 890.

The courts have repeatedly dismissed Coast Guard rescue cases under the Discretionary Function exception. The law on this point has formed into a bright-line rule: Coast Guard decisions about whether, when, or how to undertake a rescue are discretionary. Several recent cases are directly on point.

In *Matter of Moore*, 488 F. Supp. 3d 231 (D. Md. 2020), a fisherman died after his boat capsized. His personal representative alleged that Coast Guard rescue efforts were negligent. Without reaching a separate Good Samaritan defense, the Court dismissed the claim under the Discretionary Function exception, holding:

> Certainly, the Government is correct that whether to engage in rescue operations, when to conduct them, and how to execute them is a matter of discretion, as it pertains to "a question of how to allocate limited resources among competing needs."

*Id.* at 238-39 (quoting *Baum v. United States*, 986 F.2d 716, 722 (4th Cir. 1993)).

In *Lane v. United States*, No. 17-cv-12356, 2020 WL 1427419 (D. Mass. Mar. 24, 2020), a fishing boat became disabled in the Atlantic Ocean and, after an attempted tow in heavy seas, began to sink. The crew jumped into the ocean. Although a Coast Guard boat was nearby, one mariner perished. *Id.* at *1-4. Just like the present case, Plaintiffs alleged that "the Coast Guard should have launched its helicopter earlier to recover the [boat's] crew." *Id.* at *5. Dismissing the complaint against the United States, the *Lane* court concluded:

> With twenty-twenty hindsight, one could disagree with the decision not to launch the helicopter sooner, as soon as the men were ordered to leave the ship and enter the water. However, this decision about how and when to assign the helicopter falls squarely within the discretionary function exception.

*Id.* at *8.[8]

In *Turner*, 869 F. Supp. 2d 685, a couple fell overboard from their pleasure boat late one evening. After receiving an overdue-boater report, the Coast Guard called the decedent's father on the phone. *Id.* at 687. Although told where the son likely had been boating, the Coast Guard did not begin a search until the morning. *Id.* at 687-88. On these facts, the court concluded: "Therefore, this court lacks subject matter jurisdiction to evaluate the reasonableness of the Coast Guard's exercise of its discretion prior to undertaking a rescue." *Id.* at 690.

---

[8] With a short footnote, the *Lane* court held in the alternative that the claim against the United States also failed under the Good Samaritan doctrine. *Id.* at *8 n.3.

The list of cases that have gone the way of *Moore*, *Lane*, and *Turner* literally goes on and on.  *See, e.g.*, *Azille v. United States*, 2008 A.M.C. 2820 (D.V.I. Nov. 13, 2008) ("[T]he Coast Guard's decision to attempt to rescue plaintiffs and its decisions about how to search for them are the kinds of decisions the discretionary function exception to the waiver of sovereign immunity under the Suits in Admiralty Act were designed to protect."); *Lewis v. United States*, No. 3:01-cv-821, 2002 WL 34104078, at *5 (M.D. Fla. Nov. 6, 2002) ("Thus, the exercise of judgment by the Coast Guard in this case – be it deciding to rescue Brandon Lewis, deciding how to proceed with the rescue of Brandon Lewis, . . . or deciding what resources to use in executing the rescue – is clearly discretionary and of the nature and quality protected by the discretionary function exception."); *Wright v. P.J. St. Pierre Marine, Inc.*, No. 85-cv-198, 1989 WL 211485, at *8 (S.D. Tex. Nov. 17, 1989) ("Thus, the Coast Guard's decisions about what vessels to dispatch, the manner in which those vessels were equipped, [and] the decision not to dispatch helicopters . . . are all discretionary in nature and the United States is not amenable to suit on these grounds."); *In re U.S. Coast Guard Cutter POINT JUDITH*, No. 86-cv-4186, 1987 WL 90270, at *3 (C.D. Cal. June 5, 1987) ("Any decision by the Coast Guard to provide assistance is purely discretionary.").

Claimants, who "bear[] the burden to prove that the discretionary function exception does not apply," *Turner*, 869 F. Supp. 2d at 689, give this Court no basis

for setting aside such clear authority from all quarters of the United States.  Their only allegations about the Discretionary Function exception – that Coast Guard decisions about relaying information or selecting assets "were not an exercise of a discretionary function," ECF No. 33, ¶¶ 76, 79 – are textbook conclusory pleadings. "These textbook conclusory allegations are not entitled to the assumption of truth." *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 130 (D.N.J. 2017) (citing *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)).  They are, in fact, wholly unsupported in the Complaint.

Claimants fail to show that the Discretionary Function exception does not apply, and so have not met their burden of establishing subject-matter jurisdiction. *Turner*, 869 F. Supp. 2d at 689; *Antonelli v. Div. of Youth & Fam. Servs.*, No. 17-cv-5519 (RBK/KMW), 2018 WL 2078703, at *2 (D.N.J. May 4, 2018); *West v. United States*, No. 2:12-cv-535, 2013 WL 2404819, at *5 (E.D. Va. May 31, 2013) ("Plaintiff does not appear to have addressed the discretionary function exception in its Complaint . . . . This is sufficient to fell Plaintiff's claims . . . .").  The Complaint "must" be dismissed.  Rule 12(h)(3).

### 3.  There Is No Jurisdiction over the "United States Coast Guard."

As noted, Petitioners cross-claimed against the "United States Coast Guard." ECF No. 27 at 7.  Obviously, the cross-claim is derivative of the allegations in the Complaint, so should be dismissed for the reasons stated above.  Beyond that,

Petitioners' cross-claim should be dismissed for the independent reason that the "United States Coast Guard," a non-party, cannot be subject to suit in its own name. 46 U.S.C. § 30904; *Good v. Ohio Edison Co.*, 149 F.3d 413, 418 (6th Cir. 1998) ("[T]he Coast Guard cannot be a party to this SIAA action in its own name and must be dismissed as a party.") (cited in *Thomas v. Fed. Bureau of Prisons*, No. 15-cv-209, 2017 WL 3705073, at *7 (W.D. Pa. Aug. 28, 2017)). The cross-claim fails because there is no jurisdiction over the "United States Coast Guard" *eo nomine*.

## V.    CONCLUSION

Claimants fail to show either a cognizable duty owed, or jurisdiction over the claims against the United States. For all the foregoing reasons, the United States has moved that it be dismissed as a party so that the Limitation action may proceed with the remaining parties.

Dated: March 25, 2022                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General
                                         Civil Division

                                         PHILIP R. SELLINGER
                                         United States Attorney

                                         */s/ Thomas M. Brown*
                                         THOMAS M. BROWN
                                         JARED H. HOOD
                                         Trial Attorneys

United States Department of Justice
Civil Division, Torts Branch
Aviation, Space & Admiralty Litigation
175 N Street, NE, 8th Floor
Washington, DC 20002
(202) 616-4112 / 1235
thomas.m.brown@usdoj.gov
jared.h.hood@usdoj.gov
Facsimile: (202) 616-4002
*Attorneys for the United States*

21