[ECF No. 128]

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| **In re: COMPLAINT OF ADRIAN AVENA AND AA COMMERCIAL, AS OWNER AND OWNER PRO HAC VICE OF THE FISHING VESSEL CONCH'RD FOR EXONERATION FROM OR LIMITATION OF LIABILITY** | Civil No. 21-515 (KMW/EAP) |

**OPINION**

This matter comes before the Court by way of Limitation Plaintiffs Adrian Avena and AA Commercial, LLC's Motion seeking a stay of these proceedings pending decisions of the Third Circuit Court of Appeals on Plaintiffs' and Claimant Kimberly Wolfe's appeals of the District Court's Order granting the United States' motion for judgment on the pleadings. ECF No. 128. Claimant has opposed the Motion. ECF No. 145. Third-Party Defendants Daniel J. Avena, CM Hammar AB, Revere Survival, Inc., and Sea Gear Industrial LLC have not filed opposition. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow, Plaintiffs' Motion is **GRANTED**.

**FACTS AND PROCEDURAL HISTORY**

This is an admiralty case arising out of the partial sinking of the commercial fishing vessel F/V CONCH'RD ("the Vessel"), owned by Plaintiffs Adrian Avena and AA Commercial, LLC (collectively "Plaintiffs").[1] *See* Complaint for Exoneration from or Limitation of Liability

---

[1] Although Adrian Avena and AA Commercial, LLC both filed the original Complaint in this action, the Court notes that Adrian Avena is a limitation plaintiff, while AA Commercial, LLC is a plaintiff *pro hac vice* due to their respective relationships to the CONCH'RD. At all relevant times, Adrian Avena was the title owner of the Vessel, while AA Commercial, LLC was the owner

("Compl."), ECF No. 1, ¶¶ 1, 4, 8. During the early afternoon of December 3, 2020, the Vessel, operated by Plaintiff Adrian Avena, partially capsized in the Atlantic Ocean off the coast of Cape May, New Jersey. *Id.* ¶¶ 7-8; *see also* Second Amended Third-Party Complaint ("Second Am. Third-Party Compl."), ECF No. 109, ¶ 20. Although Plaintiff Adrian Avena was rescued, the Vessel's deckhand, Aaron Greenberg, lost his life. Compl., ECF No. 1, ¶ 14; Second Am. Third-Party Compl., ECF No. 109, ¶ 21. On board the Vessel was an Emergency Position Indicating Radio Beacon ("EPIRB"),[2] which transmitted a signal to a National Oceanic and Atmospheric Administration ("NOAA") base station indicating that the Vessel was submerged. Second Am. Third-Party Compl., ECF No. 109, ¶¶ 8, 23, 27. The NOAA base station received the EPIRB signal at approximately 2:07 p.m. and conveyed that information to the United States Coast Guard. *Id.* ¶ 28.

The EPIRB on board the Vessel was owned by, and registered to, Third-Party Defendant Daniel J. Avena and associated with a different boat, the GOLD RUSH II. *Id.* ¶ 24. Registration of the GOLD RUSH II's EPIRB expired in November 2017, and no one informed the authorities that the EPIRB had been physically transferred and installed on the CONCH'RD. *Id.* ¶ 25. Consequently, from 2:09 p.m. to 2:31 p.m., the Coast Guard issued incorrect urgent marine broadcasts indicating that an EPIRB aboard the boat GOLD RUSH II was sending out a distress signal. *Id.* ¶ 30. Additionally, the Coast Guard contacted Third-Party Defendant Daniel J. Avena at 2:09 p.m. and 2:36 p.m. by telephone. *Id.* ¶¶ 34-35. During the second phone call, Daniel J.

---

*pro hac vice*, meaning that the company managed, supplied, manned, maintained, and navigated the Vessel at its own expense. *See* ECF No. 1, ¶¶ 4-6. For purposes of this Opinion, the Court recognizes this distinction, but will refer to both Adrian Avena and AA Commercial, LLC as Plaintiffs.

[2] An EPIRB is a small, floatable device that alerts rescue authorities during emergencies and provides a vessel's location. *See* https://www.navcen.uscg.gov/emergency-position-indicating-radiobeacon (last visited Sept. 18, 2023).

Avena informed the Coast Guard that the EPIRB was affixed to the CONCH'RD—not the GOLD RUSH II.

At 2:44 p.m., the exact location of the EPIRB signal was determined and made available to Coast Guard rescue units.  *Id.* ¶ 38.  Within a few minutes, the Coast Guard informed Daniel J. Avena of the location.  *Id.* ¶ 40.  In addition, the Coast Guard sent a "ready waiting" helicopter in Cape May to the scene, which arrived at 3:26 p.m.  *Id.* ¶ 44.  The Coast Guard also contacted the Coast Guard cutter, the LAWRENCE LAWSON, and diverted it from its then-current mission to aid the CONCH'RD.  *Id.* ¶ 42.  The LAWRENCE LAWSON arrived at the scene of the sinking around 4:01 p.m.  *Id.*

Meanwhile, at 3:35 p.m., a rescue boat operated by civilians arrived at the scene and rescued Adrian Avena.  *Id.* ¶ 46.  Claimant alleges that "[a]ccording to statements attributed to petitioner Adrian Avena," Aaron Greenberg lost his grip on the hull of the CONCH'RD and drowned at approximately 3:15 p.m.  *Id.* ¶ 45.  Claimant further alleges that at 2:44 p.m., a Coast Guard helicopter performing law enforcement activities near the site of the capsized Vessel could have been diverted to the scene but was not.  *Id.* ¶ 43.

On January 11, 2021, Plaintiffs filed a Complaint seeking exoneration from or limitation of liability pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*  *See* ECF No. 1.  Claimant Kimberly Wolfe, as personal representative of the Estate of Aaron Greenberg, filed a claim against Plaintiffs, ECF No. 18, and a Third-Party Complaint against Daniel J. Avena and the United States of America, ECF No. 19.  Claimant then amended her Third-Party Complaint twice to add products-liability defendants CM Hammar AB, Revere Survival, Inc., and Sea Gear Marine Supply, Inc.  ECF Nos. 33, 109.

On March 25, 2022, Third-Party Defendant United States of America filed a motion for judgment on the pleadings and a motion to dismiss the United States as a party, asserting multiple grounds for dismissal, including that the United States was immune from suit and therefore, the Court lacked subject matter jurisdiction over the claims against it. ECF No. 58. More specifically, the United States argued that the discretionary function exception[3] abrogated its waiver of sovereign immunity under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 30901 to -18, and the Public Vessels Act ("PVA"), 46 U.S.C. §§ 31101 to -13.[4] After holding oral argument, the District Court granted the United States' motion and dismissed it from this action on November 4, 2022. ECF No. 96. Claimant Kimberly Wolfe and Plaintiffs Adrian Avena and AA Commercial, LLC timely filed Notices of Appeal of the District Court's Order on November 10, 2022, and November 23, 2022, respectively.[5] ECF Nos. 98, 103.

On March 24, 2023, Plaintiffs filed the present Motion to Stay Discovery and Trial pending Plaintiffs' Appeal. Although counsel for Claimant Kimberly Wolfe initially consented to the stay,

---

[3] The discretionary function exception abrogates the United States' waiver of sovereign immunity made in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Although that provision applies only to claims brought under the FTCA, the waivers of sovereign immunity in the SIAA and the PVA both implicitly include a discretionary function exception. *See Sea-Land Serv., Inc. v. United States*, 919 F.2d 888, 891 (3d Cir. 1990) (reading exception into the SIAA); *see also Wu Tien Li-Shou v. United States*, 777 F.3d 175, 184 (4th Cir. 2015) (reading exception into the PVA).

[4] Neither the SIAA nor the PVA creates causes of action against the United States. Instead, they are jurisdictional statutes that waive the Government's sovereign immunity, thereby allowing a litigant to assert admiralty claims against the United States. *O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 85 (3d Cir. 1996) (citation omitted).

[5] The briefing for both Appeals has been completed. *See In re Adrian Avena, appeal docketed*, No. 22-3132 (3d Cir. filed Nov. 10, 2022); *In re Adrian Avena, appeal docketed*, No. 22-3228 (3d Cir. filed Nov. 23, 2022). The Third Circuit has not yet indicated whether it will hold oral argument or decide the appeals on the record, briefs, and appendices.

*see* ECF No. 131, she later filed a letter in opposition to the Motion on June 26, 2023. ECF No. 145.  None of the Third-Party Defendants has opposed the Motion.

## STANDARD OF REVIEW

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "The decision to stay proceedings requires an exercise of judgment, requiring courts to weigh the competing interests and hardships with respect to the movant and the non-movant." *Anglin v. Anglin*, No. 16-4049, 2020 WL 3496916, at *2 (D.N.J. June 29, 2020).  Motions to stay proceedings are committed to a district court's "sound discretion." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976).  However, the Court is mindful that a stay of civil proceedings is an "extraordinary remedy." *Konopca v. Comcast Corp.*, No. 15-6044, 2016 WL 1645157, at *3 (D.N.J. Apr. 26, 2016) (internal quotation marks and citation omitted).

"When deciding whether to grant a stay pending appeal, the Court considers the following factors: '(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest.'" *Del. ex rel. Jennings v. BP Am. Inc.*, No. 20-1429, 2022 WL 605822, at *1 (D. Del. Feb. 8, 2022) (citing *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015)).  The moving party bears the burden of showing that a stay is warranted. *Konopca*, 2016 WL 1645157, at *3 (citing *Landis*, 299 U.S. at 255).

The first two factors—whether the appellant has demonstrated a strong showing of the likelihood of success and that it will suffer irreparable harm—are the most critical in this analysis. *In re Revel AC, Inc.*, 802 F.3d at 565. "If an appellant satisfies the first two factors, the court will weigh any harm to the opposing party and consider the public interest." *Shreenath Holding LLC v. Bezner*, No. 23-1721, 2023 WL 2808165, at *2 (D.N.J. Apr. 6, 2023). "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor." *In re Revel AC, Inc.*, 802 F.3d at 569 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)).

## DISCUSSION

Plaintiffs argue that all factors weigh in favor of this Court granting a stay of discovery and all proceedings in this matter pending the outcome of the appeals. *See* Plaintiffs' Brief in Support of Stay ("Pls.' Br."), ECF No. 128 at 2-8. Claimant does not address the relevant factors in her opposition but states that the stay would delay needed relief for her minor child. *See* Claimant's Letter Opposition ("Claimant's Ltr."), ECF No. 145. For the reasons that follow, the Court finds that all factors weigh in favor of granting a stay of this matter pending the appeals. However, because the parties have been engaged in significant discovery that has required multiple orders of the Court to effect its completion,[6] the Court will not institute the stay until the discovery identified in the Court's September 11, 2023 Amended Scheduling Order, ECF No. 168, is complete.

### I. Likelihood of Success on the Merits

With respect to the first factor, "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability, of winning." *In re Revel AC, Inc.*, 802 F.3d at 568

---

[6] *See, e.g.,* ECF Nos. 134 (ordering meet and confer on outstanding discovery disputes), 140 (same), 154 (resolving discovery disputes received in letter applications), 168 (ordering production of discovery responses).

(internal quotation marks and citation omitted). Under this "sliding scale" approach, "the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors." *Id.* (internal quotation marks omitted). "Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Id.* at 569 (cleaned up).

Plaintiffs argue that their appeal has a high likelihood of success on the merits based on an analogous, subsequent out-of-court admiralty decision by the United States District Court for the Western District of Washington in *Powers v. United States*, No. 21-0517, 2023 WL 1468478 (W.D. Wash. Feb. 2, 2023). Pls.' Br. at 2-5. Plaintiffs assert that *Powers* is factually analogous to the present case and posits that the Third Circuit is likely to adopt that district court's reasoning, which is contrary to the District Court's ruling here. *Id.* at 7-8.

In *Powers*, the plaintiff's boat capsized, and although the plaintiff survived, the plaintiff's cousin, the only other individual on the boat, died after twenty to thirty minutes in the water. 2023 WL 1468478 at *1. The Coast Guard rescued the plaintiff eight hours after the incident. *Id.* The plaintiff then sued the United States, alleging that the Coast Guard's negligence caused a delay in his rescue and the death of his cousin. *Id.* The United States moved to dismiss for lack of subject matter jurisdiction, asserting that the discretionary function exception abrogated its waiver of sovereign immunity. *Id.* Relying on Ninth Circuit precedent, the *Powers* court observed that the United States bears the burden of proving the discretionary function exception in each case. *Id.* at *2. Applying that standard, the court concluded that the United States did not meet its "burden of showing the actions or omissions giving rise to plaintiff's negligence claim were based on or susceptible to a policy analysis." *Id.* at *5.

Plaintiffs here assert that unlike the district court in *Powers*, which found that the United States bore the burden of showing that the Coast Guard's acts or omissions were "susceptible to policy analysis," *see Powers*, 2023 WL 1468478 at *5, the District Court here "placed the burden of proof on the discretionary function analysis upon the Plaintiff and Claimant, which Plaintiff believes is reversable error." Pls.' Br. at 4.  Plaintiffs further claim that the United States' assertion of sovereign immunity and the scope of the Coast Guard's activities supporting the discretionary function exception raise issues of fact that cannot be decided on a motion to dismiss. *Id.*  Lastly, Plaintiffs argue that the District Court erred when it did not grant Plaintiffs' request for leave to amend the Complaint if it granted the United States' motion because, when a complaint is dismissed on a Rule 12 motion, "'the Court must permit curative amendment, unless an amendment would be inadequate or futile.'" *Id.* at 5 (quoting *Shuman v. Lauren Kim, Inc.*, No. 14-251, 2015 WL 1472003, at *3 (D.N.J. Mar. 31, 2015)); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

Here, the Court concludes that Plaintiffs and Claimant raise colorable arguments that might succeed in the Third Circuit.  For purposes of determining whether a stay is proper here, the Court finds that Plaintiffs' and Claimant's appeals have "a reasonable chance" of success.  *See In re Revel AC, Inc.*, 802 F.3d at 568.  Although the appeals are interlocutory in nature, the relevant jurisdictional statute grants the appellate court jurisdiction to hear Plaintiffs' and Claimant's appeals on an interlocutory basis.  *See* 28 U.S.C. § 1292(a)(3).  Without a jurisdictional impediment, the Third Circuit will decide Plaintiffs' and Claimant's appeals on the merits. Thus, the Court finds that this factor weighs in favor of a stay.

## II.	Irreparable Injury to Appellant Absent Stay

This factor weighs in favor of granting a stay if an appellant "demonstrates that irreparable injury is *likely* [not merely possible] in the absence of a stay." *In re Revel AC, Inc.*, 802 F.3d at 569 (emphasis in original) (cleaned up). The Third Circuit has interpreted the term "likely" to mean "more apt to occur than not." *Id.*

Plaintiffs assert that continuing with discovery before their appeal is decided would waste the time and resources of the Court and all parties in this case. *Id.* at 6-7. The parties have reached the point where written discovery is almost complete. Depositions have yet to occur, which according to Plaintiffs will be extensive. *Id.* at 6. Plaintiffs submit that depositions of all parties will be required, in addition to numerous non-party witnesses present at the scene of the incident. *Id.* If the parties proceed with the depositions and Plaintiffs win their appeal, it is likely that the parties would have to repeat all depositions to allow the United States the opportunity to question the deponents. *Id.* at 7.

Plaintiffs further argue that they will suffer harm at trial if the case is not stayed pending the appeals. Plaintiffs contend that if the District Court apportions liability among the current parties without including the United States, Plaintiffs would seek a retrial should the appeals succeed. *Id.* at 6. If the Court does not order a retrial, Plaintiffs will have to file a separate suit for indemnity or contribution to recover from the United States. *Id.* Finally, Plaintiffs allege that a subsequent suit could be barred by res judicata or law of the case, which would unduly prejudice them. *Id.*

The Court finds that this factor weighs in favor of granting a stay. There are several parties in this case, and each party anticipates needing as many as fifteen depositions. *See* Initial Scheduling Order, ECF No. 77, ¶ 7(b). If discovery continues and the appeals are granted, it is

9

likely that all depositions would need to be repeated to give the United States a fair opportunity to litigate its case. The Court finds that this course of action risks a substantial waste of time and resources for the Court, the Plaintiffs, and all other parties. Accordingly, this factor militates in favor of a stay.

### III.     Harm to Opposing Party

The Court must also consider the harm to the opposing parties. Here, Claimant Kimberly Wolfe is the only party opposing the stay. The crux of Claimant's opposition is that the stay will harm her minor child by delaying the relief sought. *See* Claimant's Ltr., ECF No. 145 at 1. In contrast to Claimant's position, Plaintiffs argue that the stay is beneficial to the Claimant. Indeed, the Vessel was insured for $500,000 under a "wasting policy," meaning that all defense costs are included in the policy's $500,000 limit. Pls.' Br. at 7. Thus, if Plaintiffs' appeal is granted, any duplication of discovery "will further erode the insurance proceeds available to settle [Claimant's] claim or satisfy any judgment." *Id.* While the Court acknowledges that a stay delays Claimant's day in court, which is a significant consideration, the Court agrees with Plaintiffs that a stay would ultimately benefit Claimant by preserving the insurance proceeds. The Court finds that this factor weighs in favor of granting a stay in this matter.

### IV.     Public Interest

Finally, Plaintiffs argue that a stay is within the public interest because "it preserves judicial economy, conserves public resources, and avoids the possibility of unnecessary or duplicative litigation." Pls.' Br. at 7. The Court concludes that a stay is in the public interest because it would conserve judicial resources by avoiding potentially duplicative litigation. The Court finds that this factor also weighs in favor of granting a stay.

## CONCLUSION

All four factors weigh in favor of a stay of this matter. Plaintiffs have provided colorable arguments that may succeed on appeal. Absent a stay, Plaintiffs could be harmed because a successful appeal would result in duplicative discovery, including the need to re-depose the parties and multiple expected witnesses. Conversely, Claimant has not shown that granting the stay would subject her to significant harm, and in fact, proceeding with discovery may hurt the Claimant by depleting the amount of insurance funds available for any potential recovery. Lastly, the public interest in judicial economy and preserving public resources supports a stay. For the foregoing reasons, Plaintiffs' Motion to Stay is **GRANTED**. However, since the current parties have been engaged in significant discovery and are close to completing that process, the Court will not institute the stay until that discovery is complete.[7] An appropriate Order accompanies this Opinion.

s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc: Hon. Karen M. Williams, U.S.D.J.

---

[7] On September 11, 2023, the Court ordered the parties to meet and confer regarding outstanding discovery requests directed at Third-Party Defendant CM Hammar AB. Amended Scheduling Order, ECF No. 168, ¶ 2. The Court further ordered CM Hammar AB to produce the requested materials by November 22, 2023, and set a pretrial factual discovery completion date of November 30, 2023. *Id.* ¶¶ 2-3. Those deadlines remain in place. On November 16, 2023, the Court will hold a status conference to discuss the parties' progress regarding discovery. *Id.* ¶ 5. The Court will stay these proceedings once the parties have completed the discovery identified in the Court's September 11, 2023 Amended Scheduling Order, ECF No. 168.